1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

SOUTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| ALFRED E. SHALLOWHORN, CDCR #P-13049, | Case No.: 24-cv-0399-WQH-BJC |
| Plaintiff, | **ORDER: (1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS; AND** |
| vs. | |
| J. CARRILLO, F. NUNEZ, J. GALINDO; ESTRADA, JOHN DOE #1; JOHN DOE #2, G. HOPPER, H. MOSELEY, F. GUZMAN, R. VELEZ, | **(2) DISMISSING COMPLAINT FOR FAILING TO STATE A CLAIM PURSUANT TO 28 U.S.C. §§ 1915(e)(2) & 1915A(b)** |
| Defendants. | |

11
12
13
14
15
16
17
18
19
20
21
22

**BACKGROUND**

23
24
25
26
27
28

On February 26, 2024, Plaintiff Alfred E. Shallowhorn ("Plaintiff" or "Shallowhorn"), an inmate proceeding *pro se*, filed a civil rights Complaint pursuant to 42 U.S.C. § 1983. ECF No. 1. The Court dismissed the action without prejudice on March 11, 2024 because Plaintiff failed to satisfy the filing fee requirement under 28 U.S.C. § 1914(a). ECF No. 3. The Court notified Plaintiff that in order to have his case reopened, he must either pay the filing fee or submit a properly supported application to proceed *in*

*forma pauperis* ("IFP"). *Id.* After receiving an extension of time, Plaintiff filed a request to proceed IFP on June 12, 2024 (ECF No. 9) and the case was reopened. Shallowhorn filed another IFP motion on July 8, 2024. ECF No. 11. For the reasons discussed below, the Court grants Plaintiff's June 12, 2024 IFP motion, denies his July 8, 2024 IFP motion as moot, and dismisses the Complaint for failure to state a claim.

### REQUEST TO PROCEED IFP

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $405.[1] *See* 28 U.S.C. § 1914(a). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999). However, all prisoners who proceed IFP must pay the entire fee in "increments" or "installments," *Bruce v. Samuels*, 577 U.S. 82, 83–84 (2016), regardless of whether their action is ultimately dismissed. *See* 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) requires all persons seeking to proceed without full prepayment of fees to file an affidavit that includes a statement of all assets possessed and demonstrates an inability to pay. *See Escobedo v. Applebees*, 787 F.3d 1226, 1234 (9th Cir. 2015). In support of this affidavit, the PLRA also requires prisoners to submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005).

Here, Plaintiff has submitted two IFP motions and a copy of his trust account

---

[1] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $55. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2023)). The additional $55 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

statement and prison certificate. ECF Nos. 4, 9, 11. Based on those documents, Shallowhorn has an average monthly balance of $0.00, average monthly deposits of $0.00, and an available account balance of $0.00. *See* ECF No. 4 at 1. Therefore, the Court finds Plaintiff has established an inability to pay the required $350 filing fee and **GRANTS** Plaintiff's June 12, 2024 IFP motion (ECF No. 9). While the Court assesses no initial payment, Plaintiff will be required to pay the full $350 filing fee in installments to be collected from his trust account as set forth in 28 U.S.C. § 1915(b)(2). Plaintiff's July 8, 2024 IFP motion (ECF No. 11) is denied as moot.

## SCREENING PURSUANT TO 28 U.S.C. §§ 1915(e)(2) & 1915A(b)

**A.    Standard of Review**

Because Plaintiff is a prisoner proceeding IFP, his Complaint requires pre-Answer screening pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b). The Court must *sua sponte* dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)).

 "The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) ("Failure to state a claim under § 1915A incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).") Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "[T]he tenet that a court must accept as true all of the allegations contained in a

3

complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678.

Title 42 U.S.C. § 1983 "creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

**B.   Plaintiff's Factual Allegations**

In his Complaint, Shallowhorn states that on July 25, 2023, the Unit Classification Committee at Centinela State Prison ("CEN"), where he was then confined, conducted a classification hearing. ECF No. 1 at 8. Plaintiff alleges that Hopper, the head of the Classification Committee, failed to properly address his needs when assessing his classification level. *Id*. at 32. At some point during the hearing, Hopper asked Correctional Officer Velez's opinion as to whether he should assess Plaintiff a loss-of-privileges ("LOP") for 90 or 180 days. Velez "aggressively opposed" a 90-day LOP. *Id*. at 34–35. Shallowhorn alleges that on another occasion, Velez gave a "non-black" inmate a more lenient punishment. *Id*. at 35. At the conclusion of his classification hearing, Plaintiff was placed on C-status and assessed 180 days of LOP, because he had suffered two previous serious rule violations. *Id*. at 8. The 180-day LOP included loss of yard time, programming and certain items of personal property, including televisions. *Id*. Shallowhorn was concerned about losing his television so later that day, he sought assistance from his mental health care provider in convincing prison officials to reconsider confiscating his television. *Id*. at 8–9.

Upon returning to his cell, Shallowhorn was approached by Correctional Officers Nunez and Galindo, who told him he needed to "turn in his T.V." *Id*. at 9. Plaintiff explained he had just asked "medical" to allow him to keep his television and was waiting for a response from the "captain." *Id*. at 9–10. Nunez and Galindo told Plaintiff to "bring

[the television] out after chow." *Id.* at 10. Shortly thereafter, Nunez and Galindo came back to Shallowhorn's cell and demanded the television. Plaintiff asked if they had called the captain about the matter and Galindo nodded his head. Shallowhorn asked for more details, including when they spoke to the captain and what exactly the captain had said but Galindo refused to answer. *Id.* at 10–11. Shallowhorn contends Nunez and Galindo "lied" about talking to the captain in order to justify taking his television. *Id.* at 11.

Later than same day, Plaintiff submitted a CDCR Form 22 request for interview, in which he asked that Nunez and Galindo provide an explanation regarding who they had called about the television, what they said, and what time the conversation took place. *Id*. Galindo responded to the request by referencing the general rules regarding prohibited property while on C-status and further stated he was "told not to answer questions or say the name" of the individual he spoke to regarding Plaintiff's television. *Id.*

Nunez and Galindo returned to the officer podium where they appeared to be looking at Plaintiff's CDCR Form 22. About 15–20 minutes later, Nunez and Galindo "went to about four other cells and took the televisions of at least four other inmates who were also on C-Status." *Id.* at 12. Shallowhorn alleges this was done to avoid any appearance that Plaintiff was being treated differently than other inmates on C-status. Plaintiff overheard Nunez and Galino tell another inmate that they would "give his TV back when Plaintiff leave[s]." *Id.* at 13. Shallowhorn prepared a CDCR Form 602 administrative grievance against Nunez and Galindo concerning the confiscation of his television and placed it, along with his CDCR Form 22, in the grievance lock-box. *Id.*

The next day, July 26, 2023, Shallowhorn met with his mental health provider and expressed his distress at having his television taken. *Id.* at 14. Shallowhorn's doctor later "email[ed] the captain" about reconsidering the decision to take the TV. *Id.*; *see also* ECF No. 1-2, Ex. B at 11.

Later that day, Nunez and Galindo came to Plaintiff's cell. Nunez was holding the CDCR Form 22 and 602 grievance Plaintiff had placed in the lock box the day before. *Id.* at 15. Shallowhorn asked how they had gotten the papers from the locked box and Nunez

responded that they were "left on the podium saying give them back to you." *Id.* When Plaintiff asked who had directed him to return the forms, Nunez did not respond. *Id.* at 15. Plaintiff later asked the staff member responsible for gathering grievances from the lock box if she had asked Nunez and Galindo to return his paperwork and she stated she had not. *Id.* at 17. Shallowhorn placed the CDCR Form 22 and 602 grievance back in the lock box. *Id.*

The next day, July 27, 2023, Carrillo and Nunez came to Plaintiff's cell and returned his television. *Id.* at 14, 18. Carrillo stated, "Here's your TV so you won't do something to yourself." *Id.* at 18. Carrillo then told Plaintiff he needed to take his CD player and hot pot. Because Plaintiff had been primarily concerned about his television, he did not protest and gave Carrillo his CD player and hot pot, even though neither were listed as on his disciplinary sheet. *Id.*

Carrillo and Nunez returned to Plaintiff's cell shortly after taking the items and Carrillo "taped a paper" on Plaintiff's cell door. *Id.* at 20. Shallowhorn was unable to see the contents of the paper until the next morning, when he discovered it was a "confidential note" from his mental health doctor, explaining why Plaintiff's television should not be confiscated. *Id.* at 21. Plaintiff took the paper off his cell door. He complained to an unnamed staffer that Carrillo should not have posted it because it contained confidential information about his mental health. *Id.* at 22.

Shallowhorn also alleges Carrillo, Estrada, Doe #1 and Doe #2 denied him sufficient "exercise time" required for inmates on C-status. *Id.* at 26–27. He states he was denied yard and/or dayroom time on 18 days between July 27, 2023 and September 30, 2023. *Id.* at 27. Plaintiff complained about the issue to Carrillo and Estrada to no avail. Shallowhorn alleges that the California Department of Corrections requires he have "no less than 10 hours of yard/program activities" a week. *Id.* at 28–29. Shallowhorn filed an administrative grievance on the matter which Mosely denied after a "biased investigation." *Id.* at 31.

Ultimately, Moseley, with the Office of Appeals, denied Plaintiff's administrative 602 grievance(s) and appeal(s) regarding the confiscation of his CD player and hot pot, the

denial of sufficient yard and/or dayroom time, and related staff misconduct. *Id.* at 24–26. He alleges Moseley was biased against him. *Id.* at 25.

**C.   Discussion**

In his Complaint, Plaintiff names ten Defendants—Carrillo, Nunez, Guzman, Estrada, Doe #1, Doe #2, Hopper, Moseley, Guzman and Velez—all in both their official and individual capacities. ECF No. 1 at 2–4. He seeks money damages and injunctive relief preventing, among other things, future "reprisal, retaliation [and] harassment." *See id.* at 38. Although Shallowhorn lists only three "causes of action," some contain more than one basis for relief, while others overlap. *Id.* at 5–7. For the purposes of clarity, the Court will discuss each ground for relief as set forth below.

**1.   *Warden Guzman – Supervisory Liability***

Plaintiff fails to state a claim against Guzman, the Warden of Centinela during the relevant period. ECF No. 1 at 4. Liability may not be imposed on supervisory personnel under the theory of respondeat superior, as each defendant is only liable for his or her own misconduct. *Iqbal*, 556 U.S. at 678. A supervisor may be held liable only if he or she "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011). Under section 1983, Plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) (emphasis added). Here, Shallowhorn raises no allegation that Guzman personally deprived him of his constitutional rights and therefore he has failed to state a claim against him. *See Iqbal*, 556 U.S. at 677 ("Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Therefore, his claims against Guzman are DISMISSED pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1); *see also Lopez*, 203 F.3d at 1126–27.

/ / /

/ / /

### 2.    *Official Capacity and Eleventh Amendment*

To the extent Plaintiff sues all ten Defendants for money damages in their official capacities, he is barred by the Eleventh Amendment. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment bars suits for money damages against states and their agencies under § 1983. *See Howlett v. Rose*, 496 U.S. 356, 365 (1990). "California has not waived its Eleventh Amendment immunity with respect to claims brought under [Section] 1983 in federal court." *Brown v. Cal. Dep't of Corr.*, 554 F.3d 747, 752 (9th Cir. 2009). Thus, because the California Department of Corrections and Rehabilitation ("CDCR") is a state agency, its employees, including the Defendants, sued in their official capacities are immune from suit for monetary damages.

Accordingly, Shallowhorn's claims for monetary damages against all Defendants in their official capacities are DISMISSED as barred by the Eleventh Amendment. Because it is clear this jurisdictional bar cannot be cured by further amendment, the dismissal is without leave to amend. *See Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) ("Dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment.").

### 3.    *Eighth Amendment*

Plaintiff alleges Defendants Carrillo, Nunez, Galindo, Estrada, Doe #1 and Doe #2 violated his "right to be free from punishment" and his right to "less restrictive confinement" as a result of his C-status classification. ECF No. 1 at 5. He further states Carrillo, Estrada, Doe #1 and Doe #2 denied him sufficient yard and/or dayroom access on 18 days between July 25, 2023 through September 2023. *Id.* at 26–27. The Court liberally construes these allegations as claims arising under the Eighth Amendment. *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (stating pro se complaints should be liberally construed).

To state an Eighth Amendment claim related to the conditions of confinement, a

prisoner must meet both an objective and subjective test. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). The objective prong requires a showing that the purported deprivation was "objectively, 'sufficiently serious.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). To meet the objective prong, a prisoner must demonstrate "unquestioned and serious deprivations of basic human needs" or of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The subjective prong requires an inmate establish the defendant's "sufficiently culpable state of mind" through a showing of the prison officials' "deliberate indifference" to inmate health and safety. *Farmer*, 511 U.S. at 834. Liability may follow only if a prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847.

Here, Shallowhorn fails to state a plausible Eighth Amendment violation against Carrillo, Nunez, Galindo, Estrada, Doe #1 and Doe #2 based on his C-status classification (and concomitant 180-day LOP) because "a prisoner has no constitutional right to a particular classification status." *Hernandez v. Johnston*, 833 F.2d 1316, 1318 (9th Cir. 1987).

Plaintiff also fails to state an Eighth Amendment claim against Carrillo, Estrada, Doe #1 and Doe #2 based on a purported failure to provide him with adequate exercise time while he was on C-status. Shallowhorn alleges Carrillo denied him yard and/or dayroom access on 18 days between July 25, 2023 through September 2023. ECF No. 1 at 26–27. However, the temporary deprivation of dayroom and yard privileges does not equate to a deprivation of "the minimal civilized measure of life's necessities" required under the Eighth Amendment.[2] *See Farmer*, 511 U.S. at 834; *May v. Baldwin*, 109 F.3d 557, 565

---

[2] To the extent Shallowhorn alleges he was denied the 10 hours of yard and/or dayroom time required under section 3044(f) of the California Code of Regulations, this alone is insufficient to state an Eighth Amendment claim. Violations of state prison rules and regulations, without more, do not support claims under section 1983. *Ove v. Gwinn*, 264 F.3d 817, 824 (9th Cir. 2001); *Sweaney v. Ada County*, 119 F.3d 1385, 1391 (9th Cir. 1997).

(9th Cir. 1997) (finding no Eighth Amendment violation based on denial of the opportunity to exercise outdoors for 21 days while inmate was in disciplinary segregation); *Moore v. Lamarque*, 242 Fed. Appx. 458, 460 (9th Cir. 2007) (concluding limitations on dayroom and yard privileges imposed on C-status inmate were not sufficient to state Eighth Amendment violation); *McLaughlin v. Diaz*, 2015 WL 1746556, at *3 (E.D. Cal. 2015), report and recommendation adopted, 2015 WL 3545674 (E.D. Cal. 2015) (dismissing Eighth Amendment claim based on C-status placement as insufficiently serious under the objective prong); *Washington v. Cal. Dep't of Corrs. & Rehab.*, 2010 WL 729935, at *1 (E.D. Cal. 2010) (same). Therefore, Shallowhorn fails to state a claim against Carrillo.

As to Estrada, Doe #1 and Doe #2, Plaintiff alleges only that they failed to "ensure" Carrillo (and other staff) provided him with sufficient access to the yard and/or dayroom. *See* ECF No. 1 at 26–28, 30. As discussed above, however, there is no supervisory liability under § 1983. *Jones*, 297 F.3d at 934. And Shallowhorn has failed to allege any personal participation on the part of Estrada, Doe #1 and/or Doe #2; as such, he has failed to state an Eighth Amendment claim against them.

Accordingly, for the above reasons, the Court finds Plaintiff has failed to state an Eighth Amendment claim related to his classification and loss of privileges/exercise as to any Defendant. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); *Iqbal*, 556 U.S. at 678. Because the Court finds further leave to amend this claim would be futile, it is DISMISSED without leave to amend. *See Zixiang*, 710 F.3d at 999.

### 4. Due Process

Shallowhorn alleges several due process claims. Specifically, he alleges his right to due process was violated when: (1) Hopper conducted an unfair classification hearing; (2) Galindo, Nunez and Carrillo confiscated his television, CD player and hot pot; and (3) Moseley failed to adequately review his administrative appeals. *See* ECF No. 1 at 19, 24, 32–33.

#### a. Legal Standard

In general, the Fourteenth Amendment Due Process Clause provides that "[n]o state

shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "To state a procedural due process claim, [a plaintiff] must allege '(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; (and) (3) lack of process.'" *Wright v. Riveland*, 219 F.3d 905, 913 (9th Cir. 2000) (quoting *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993)).

## b.   C-Status Classification and LOP

Plaintiff alleges Hopper, who oversaw the Classification Committee Hearing, violated his due process rights when he placed Plaintiff on C-status and assessed a 180-day LOP. ECF No. 1 at 32. To state such a due process claim, Shallowhorn must allege facts which show his reclassification to C-status implicated a "liberty interest" by imposing an "atypical and significant hardship on [Plaintiff] in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

Plaintiff has failed to do so here. In general, courts have held that reclassification to C-status does not implicate a protected liberty interest. *See Hernandez*, 833 F.2d at 1318 (stating "a prisoner has no constitutional right to a particular classification status"); *see also Sanchez v. Miller*, 2016 WL 536890, at *5 (S.D. Cal. 2016) (concluding the plaintiff had no liberty interest in avoiding 30-day placement on C-status), accepted by 2016 WL 524438 (S.D. Cal. 2016); *Wyatt v. Swearingen*, 2010 WL 135322, *8–9 (N.D. Cal. 2010) (finding no liberty interest in prisoner's year-long C-status placement); *Washington v. Cal. Dep't of Corrs. & Rehab.*, 2010 WL 729935, *1 (E.D. Cal. Mar. 1, 2010) (finding no liberty interest in delayed release from C-status).

Similarly, without more, an alleged temporary loss of privileges does not implicate a protected liberty interest. *See Anderson v. County of Kern*, 45 F.3d 1310, 1315 (9th Cir.) (stating hardships "such as loss of recreational and rehabilitative programs or confinement to one's cell for a lengthy period of time" do not give rise a liberty interest), opinion amended on denial of reh'g, 75 F.3d 448 (9th Cir. 1995); *see also Quoc Xuong Luu v. Babcock*, 404 F. App'x 141, 142 (9th Cir. 2010) ("[T]he district court properly dismissed

[plaintiff's] due process claim concerning his temporary loss of prison privileges because [plaintiff] failed to allege facts implicating a protected liberty interest."). Therefore, Shallowhorn has failed to state a due process claim against Hopper.

### c.  Deprivation of Property

Next, Shallowhorn claims Nunez, Galindo and Carrillo confiscated his television, CD player and hot pot, in violation of his due process rights. ECF No. 1 at 11, 18. The Due Process Clause protects inmates from being deprived of personal property without due process of law. S*ee Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). But here, Shallowhorn's television, CD player and hot pot were only confiscated temporarily[3] as a result of his C-status classification. Such temporary deprivations based on reclassification are not entitled to due process. *See Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam) (finding that the district court did not err in dismissing plaintiff's claim that he was deprived of property without due process of law because the property was deprived due to reclassification and under the new classification, he was not eligible to possess the additional property).

Furthermore, even if Plaintiff alleged permanent deprivation of the items, he would still fail to state a claim because "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). California law provides an adequate post-deprivation remedy in the form of tort claims against public officials. *See* Cal. Gov't Code §§ 810–895; *Barnett*, 31 F.3d at 816–17 (holding that California law provides an adequate post-deprivation remedy for any property deprivation); *see also Stribling v. Wilson*, 770 F. App'x 829, 830 (9th Cir. 2019) (dismissing claims that a

---

[3] Plaintiff's television was returned after two days. ECF No. 1 at 14. And exhibits attached to the Complaint suggest his CD player and hot pot were returned on October 3, 2023, when he was taken off C-status. *See* ECF No. 1-2 at 18.

24cv0399-WQH-BJC

prisoner was wrongfully deprived of personal property and noting that California law provides an adequate post-deprivation remedy). Therefore, Plaintiff has failed to state a due process claim based on deprivation of property.

### d.   Review of Administrative Grievances

Next, Shallowhorn alleges he was deprived of due process when Moseley denied his administrative grievances and/or appeals related to the claims contained in the Complaint. *See* ECF No. 1 at 24–25. However, a prison official's involvement in the review or resolution of inmate grievances, without more, is not actionable under Section 1983. *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *see also Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988)) (stating due process is not violated simply because a defendant fails properly to process grievances submitted for consideration); *Shallowhorn v. Molina*, 572 F. App'x 545, 547 (9th Cir. 2014) (concluding the district court properly dismissed Section 1983 claims against defendants who "were only involved in the appeals process") (citing *Ramirez*, 334 F.3d at 860). Therefore, Plaintiff has failed to state a due process claim against Moseley.

### e.   Conclusion

In sum, Plaintiff has failed to state a due process claim for deprivation of liberty or property under the Fourteenth Amendment. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); *Iqbal*, 556 U.S. at 678. And because the Court finds it clear that amendment would be futile, Shallowhorn's due process claims are DISMISSED as to all Defendants without leave to amend. *See Zixiang*, 710 F.3d at 999.

### *5.   Equal Protection*

Shallowhorn alleges his right to equal protection was violated when Velez recommended that Hopper impose a 180-day LOP on him. ECF No. 1 at 34–35. The Equal Protection Clause of the Fourteenth Amendment broadly requires the government to treat similarly situated people equally. *Hartman v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). To state an equal protection claim, a plaintiff must typically allege "'defendants

acted with an intent or purpose to discriminate against [him] based upon membership in a protected class,'" such as a particular race or religion. *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013) (quoting *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998)). "Intentional discrimination means that a defendant acted at least in part *because* of a plaintiff's protected status." *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003) (emphasis in original).

Here, Shallowhorn alleges Velez "angrily opposed" Hopper's suggestion that he be given 90 days LOP, as opposed to the maximum of 180 days, based on racial bias. But Shallowhorn fails to allege sufficient facts to plausibly allege Velez's opposition to a shorter LOP term was based on racial discrimination. Shallowhorn merely points to one occasion where Velez recommended a "non-black inmate" receive a 60-day LOP when the maximum possible LOP assessment for that inmate was 150 days. ECF No. 1 at 35. But Plaintiff fails to provide any facts to suggest this inmate was otherwise similarly situated as to their disciplinary record or that the difference in recommended LOP terms between himself and the non-black inmate had anything to do with race. Plaintiff's conclusory allegations are insufficient to state an Equal Protection claim and therefore the claim is DISMISSED without prejudice. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); *Iqbal*, 556 U.S. at 678.

### 6.   *Mail Tampering/Access to Courts*

Shallowhorn alleges Nunez and Galindo improperly obtained copies of the Form-22 and 602 administrative grievance he submitted on July 25, 2023 in violation of his First Amendment rights. ECF No. 1 at 15–16. Shallowhorn contends Nunez and Galindo retrieved the documents after improperly accessing the locked drop box containing inmate grievances. *Id.* The Court liberally construes these allegations as claims arising under the First Amendment. *See Hebbe*, 627 F.3d at 342.

First, to the extent Plaintiff frames this claim as "mail tampering," (*id.* at 16), he fails to state a claim. While prisoners generally have "a First Amendment right to send and receive mail," *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995), the greivance drop box

is not a depository for "mail" but rather for internal administrative grievances. *See* Cal. Code Regs. tit. 15, § 3482(a)(1) (permitting the placement of grievances in institutional lock boxes). In addition, isolated incidents of mail interference or tampering are generally insufficient to support a claim under section 1983. *See Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003); *see also Jones v. Horn*, 2024 WL 3951990, at *9 (C.D. Cal. 2024) ("Isolated incidents of mail interference or tampering, without evidence of improper motive or resulting interference with the inmate's rights to counsel or to access the courts, generally will not support a claim under Section 1983 for violation of an inmate's constitutional rights.").

Shallowhorn also fails to state a claim based on a purported denial of access to the courts. In order to state such a claim under the First Amendment, a prisoner must allege that he suffered an "actual injury" as a result of the defendants' alleged actions. *Lewis v. Casey*, 518 U.S. 343, 351–55 (1996). To establish actual injury, the inmate must show "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Nev. Dep't of Corrs. v. Greene*, 648 F.3d 1014, 1018 (9th Cir. 2011) (quoting *Lewis*, 518 U.S. at 349). Here, Shallowhorn has not alleged he suffered an actual injury. He merely speculates that Nunez and Galindo improperly intercepted his administrative grievances (*see* ECF No. 1 at 16), and he has alleged no facts suggesting this action resulted in his inability to meet a deadline or present a claim in court. Indeed, Plaintiff admits he placed the grievance forms back in the drop box shortly after his interaction with Nunez and Galindo. *Id*. Therefore, Shallowhorn has failed to state a First Amendment claim against Nunez and Galindo based on their purported interference with the grievance drop box. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); *Iqbal*, 556 U.S. at 678. The Court finds amendment of this claim would be futile and therefore DISMISSES the claim without leave to amend. *See Zixiang*, 710 F.3d at 999.

### 7.   *Retaliation*

Plaintiff alleges Carrillo, Galindo, Nunez and Velez retaliated against him in

violation of his First Amendment rights. *See* ECF No. 1 at 9, 12. "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005).

Adverse actions include threats of discipline, transfer, or harm and do not need to be an independent constitutional violation. *Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009). Retaliation against prisoners for filing grievances violates the First Amendment. *Id.* at 1269. "Because direct evidence of retaliatory intent rarely can be pleaded in a complaint, allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal." *Watison*, 668 F.3d at 1114; *see Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995) ("[T]iming can properly be considered as circumstantial evidence of retaliatory intent.").

Plaintiff alleges Carrillo, Nunez, Galindo and Velez agreed to confiscate his television as "soon as he was placed on C-status" in retaliation for "filing grievances (602s) on c/o's (staff)." ECF No. 1 at 9. In support of his claim, Shallowhorn references several grievances he submitted *after* he was placed on C-status (*see generally*, ECF No. 1-2, Exs.), but he fails to point to any specific grievance(s) lodged prior to the July 25, 2023 confiscation of his television which could have been the impetus for the purported retaliation. Mere speculation that defendants acted out of retaliation is not sufficient. *Woody v. Yordy*, 753 F.3d 899 (9th Cir. 2014). In addition, Shallowhorn admits that when he was placed on C-status on July 25, 2023, he received a 180-day LOP which included a loss of "yard [time], program activities and T.V." *Id*. at 8. Thus, he has failed to plausibly allege that "'retaliatory animus' was the 'but for' cause" of the confiscation of his television. *Sampson v. County of Los Angeles*, 974 F.3d 1012, 1019 (9th Cir. 2020) (quoting *Nieves v. Bartlett*, 587 U.S. 391, 398–99 (2019)).

Finally, Shallowhorn alleges Carrillo and Nunez confiscated his CD player and hot

24cv0399-WQH-BJC

pot in retaliation for being forced to return his television.[4] ECF No. 1 at 20. But, as discussed above, Plaintiff admits that inmates lose the privilege to have certain special property items while classified as C-status. *See id.* at 25. Thus, he has failed to allege a lack of a legitimate penological purpose in temporarily confiscating those items while he was so classified.[5] *See Barnett*, 31 F.3d at 816 (stating preservation of institutional order and discipline advances a legitimate penological interest); *see also, e.g.*, Cal. Code Regs., tit. 15, § 3190(m) (stating inmates with C-status classification are not permitted to possess entertainment appliances and other special property).

Therefore, the Court finds Plaintiff has failed to state a retaliation claim against Carrillo, Nunez, Galindo and Velez and DISMISSES those claims without prejudice. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); *Iqbal*, 556 U.S. at 678.

### 8. *Conspiracy*

Shallowhorn alleges Carrillo, Nunez, Galindo and Nunez conspired to retaliate against him by taking his television. ECF No. 1 at 9. "To state a claim for a conspiracy to violate one's constitutional rights under section 1983, the plaintiff must state specific facts to support the existence of the claimed conspiracy." *Burns v. County of King*, 883 F.2d 819, 821 (9th Cir. 1989). "[A] plaintiff must demonstrate the existence of an agreement or meeting of the minds to violate constitutional rights." *Crowe v. County of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010). "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002). In addition, a plaintiff must show that an "actual deprivation of his constitutional rights

---

[4] Shallowhorn's television was returned after his mental health provider requested Shallowhorn be permitted to "keep his television [to] allow him to cope with his current anxiety and stress issues." ECF No. 1-2 at 11.

[5] As noted above, exhibits attached to the Complaint indicate Plaintiff's CD player and hot pot were returned to him on October 2, 2023, when he was taken off C-status. ECF No. 1-2 at 18.

1  resulted from the alleged conspiracy." *Hart v. Parks*, 450 F.3d 1059, 1071–72 (9th Cir.
2  2006) (quoting *Woodrum v. Woodward County*, 866 F.2d 1121, 1126 (9th Cir. 1989)).

3  Shallowhorn provides no specific facts to support his conclusory allegations. While
4  an agreement "may be inferred on the basis of circumstantial evidence," here Plaintiff has
5  failed to allege *any* facts from which this Court could infer a "meeting of the minds" by
6  Carrillo, Nunez, Galindo and/or Velez. *See Burns v. County of King*, 883 F.2d 819, 821
7  (9th Cir. 1989) ("To state a claim for a conspiracy to violate one's constitutional rights
8  under section 1983, the plaintiff must state specific facts to support the existence of the
9  claimed conspiracy."); *Solomon v. Las Vegas Metro. Police Dep't*, 441 F. Supp. 3d 1090,
10 1100 (D. Nev. 2020) ("[M]ere recitation of the elements [of conspiracy] does little to help
11 his claim."). In addition, as discussed above, Shallowhorn has failed to state a First
12 Amendment retaliation claim regarding the confiscation of his property while he was on
13 C-status. As such, he has not plausibly alleged a deprivation of his constitutional rights
14 resulted from any purported conspiracy. *See Hart*, 450 F.3d at 1071–72. Therefore,
15 Plaintiff's conspiracy claims against Carrillo, Nunez, Galindo and Velez are DISMISSED
16 without prejudice for failure to state a claim. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii),
17 1915A(b)(1); *Iqbal*, 556 U.S. at 678; *Lopez*, 203 F.3d at 1127.

### 9. HIPAA

19 Lastly, Shallowhorn alleges Carrillo violated his rights under "The HIPPA [sic] Act"
20 when he allegedly posted a note on Shallowhorn's cell door from his mental health care
21 provider containing personal health information. ECF No. 1 at 24. It is well established
22 that the Health Insurance Portability and Accountability Act ("HIPAA") does not provide
23 a private cause of action. *Webb v. Smart Document Sols., LLC*, 499 F.3d 1078, 1081 (9th
24 Cir. 2007). Therefore, Plaintiff has failed to state a HIPAA claim. *See* 28 U.S.C. §§
25 1915(e)(2)(B)(ii), 1915A(b)(1). Because the Court finds amendment of this claim would
26 be futile, it is DISMISSED without leave to amend. *See Zixiang*, 710 F.3d at 999.

### 10. Leave to Amend

28 Given Plaintiff's pro se status, the Court grants him an opportunity to amend his

complaint to sufficiently allege a claim if he can, *__as to his Equal Protection, First__*
*__Amendment Retaliation, and Conspiracy claims only__*. *See Rosati v. Igbinoso*, 791 F.3d
1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without
leave to amend [pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)] unless it is absolutely clear that
the deficiencies of the complaint could not be cured by amendment.") Plaintiff is cautioned
that any amended complaint *__must comply with the Federal Rules of Civil Procedure and__*
*__the Local Rules for this Court__*. Fed. R. Civ. P. 8(a)(2) (requiring complaint contain "a
short and plain statement of the claim[s]"); S.D. Cal. Civ. L.R. 8.2 (requiring "[c]omplaints
by prisoners under the Civil Rights Act, 42 U.S.C. § 1983" be written on forms "supplied
by the Court" and any "additional pages not to exceed fifteen (15) in number").

## CONCLUSION AND ORDER

For the reasons set forth above, the Court:

1.     **GRANTS** Plaintiff's Motion to Proceed IFP (ECF No. 9) pursuant to 28
U.S.C. § 1915(a); and DENIES as moot, Plaintiff's second IFP motion (ECF No. 11).

2.     **ORDERS** the Secretary of the CDCR, or his designee, to collect the $350
filing fee owed in this case by collecting monthly payments from the account in an amount
equal to twenty percent (20%) of the preceding month's income and forward payments to
the Clerk of the Court each time the amount in the account exceeds $10 in accordance with
28 U.S.C. § 1915(b)(2). ALL PAYMENTS MUST CLEARLY IDENTIFY THE NAME
AND CASE NUMBER ASSIGNED TO THIS ACTION.

3.     **DIRECTS** the Clerk of the Court to serve a copy of this Order on Jeff
Macomber, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001, by
U.S. Mail, or by forwarding an electronic copy to trusthelpdesk@cdcr.ca.gov.

4.     **DISMISSES** Plaintiff's Complaint in its entirety for failure to state a claim
pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b).

5.     **GRANTS** Plaintiff **forty-five (45)** days leave from the date of this Order in
which to file a First Amended Complaint which cures the deficiencies of pleading noted in
this Order **as to his Equal Protection, First Amendment Retaliation and Conspiracy**

**claims only**. Plaintiff's First Amended Complaint must be complete by itself without reference to his original Complaint. *See* S.D. Cal. Civ. L.R. 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

If Plaintiff fails to timely file a First Amended Complaint, the Court will enter a final Order dismissing this civil action based both on failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1), and failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED.**

Dated:  October 3, 2024

Hon. William Q. Hayes
United States District Court

24cv0399-WQH-BJC