UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALFRED E. SHALLOWHORN, CDCR #P-13049,<br><br>                              Plaintiff,<br><br>         vs.<br><br>J. CARRILLO; F. NUNEZ; J. GALINDO; ESTRADA; JOHN DOE #1; JOHN DOE #2; G. HOPPER; H. MOSELEY; F. GUZMAN; R. VELEZ,<br><br>                              Defendants. | Case No.:  24-cv-0399-WQH-LR<br><br>**ORDER (1) DENYING MOTION FOR APPOINTMENT OF COUNSEL [ECF No. 14]**<br><br>**(2) DISMISSING FIRST AMENDED COMPLAINT FOR FAILURE TO COMPLY WITH FEDERAL RULE OF CIVIL PROCEDURE 8 AND FAILURE TO STATE A CLAIM PURSUANT TO 28 U.S.C. §§ 1915(e)(2) & 1915A(b)** |

## BACKGROUND

Plaintiff Alfred E. Shallowhorn ("Plaintiff" or "Shallowhorn"), a state inmate, is proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. ECF No. 1. The Court initially dismissed the action without prejudice for failure to pay the filing fee. ECF No. 3. While the case was still dismissed, Shallowhorn filed a Motion for Appointment of Counsel. ECF No. 6. The Court denied the motion but *sua sponte* granted Plaintiff an extension of time to file a request to proceed *in forma pauperis* ("IFP"). ECF No. 8.

Plaintiff subsequently filed an IFP motion, and the case was reopened. ECF No. 11. On October 3, 2024, the Court granted Plaintiff's IFP motion and dismissed the original complaint without prejudice for failure to state a claim. ECF No. 13. The Court granted Plaintiff leave to amend his complaint as to some of his claims. *See id.*

On November 4, 2024, Shallowhorn filed a motion for reconsideration of the Court's order denying his motion for appointment of counsel and a request for an extension of time to file an amended complaint. ECF No. 14. But before the Court could rule on the motion, Plaintiff filed a timely First Amended Complaint ("FAC"). ECF No. 15. For the reasons discussed below, the Court construes Plaintiff's motion for reconsideration as a renewed request for appointment of counsel, denies the request and dismisses the FAC for failure to state a claim.

**MOTION FOR RECONSIDERATION RE APPOINTMENT OF COUNSEL**

Shallowhorn asks the Court to reconsider its denial of his motion to appoint counsel pursuant to 28 U.S.C. § 1915(e)(1), now that he has been granted IFP status. ECF No. 14. The same motion also includes a request for an extension of time to file Plaintiff's FAC. Because the FAC was ultimately timely filed, the request for extension of time is denied as moot.

As for Plaintiff's motion for reconsideration of his request for appointment of counsel, the Court liberally construes it as a renewed motion for appointment of counsel.[1] *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (stating pro se pleadings must be construed liberally); *see also Encinas v. Univ. of Wash.*, 2022 WL 4598083, at *9 (W.D. Wash. Sept. 30, 2022) (liberally construing a pro se plaintiff's motion for reconsideration

---

[1] As this Court explained in its order denying Plaintiff's original motion, counsel may not be appointed pursuant to 28 U.S.C. § 1915(e)(1), unless the plaintiff has been determined eligible to proceed IFP. *See* 28 U.S.C. § 1915(e)(1); *Agyeman v. Corr. Corp. of Am.*, 390 F.3d 1101, 1103 (9th Cir. 2004). At the time the Court ruled on Shallowhorn's original motion, the case was dismissed for failure to satisfy the filing fee requirement (and no IFP motion had yet been filed, much less granted). *See* ECF No. 8.

1  of order denying appointment of counsel as a renewed motion for appointment of counsel).

2  There is no constitutional right to counsel in a civil case. *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 25 (1981); *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009). However, under 28 U.S.C. § 1915(e)(1), courts have the authority to "request" that an attorney represent indigent civil litigants who are proceeding IFP upon a showing of "exceptional circumstances." *Agyeman*, 390 F.3d at 1103; *see also Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991). A finding of exceptional circumstances requires the Court "to consider whether there is a 'likelihood of success on the merits' and whether 'the prisoner is unable to articulate his claims in light of the complexity of the legal issues involved.'" *Harrington v. Scribner*, 785 F.3d 1299, 1309 (9th Cir. 2015) (quoting *Palmer*, 560 F.3d at 970).

Here, Shallowhorn states appointment of counsel is required because he "may succeed on the merits if pro bono counsel [is] appointed." ECF No. 14 at 2. He also argues appointment of counsel would "serve the public interest" and could help "negotiate and reason with defendants to resolve the case." *Id.* Finally, Plaintiff suggests the case "will require discovery" and he would benefit from counsel because he "lack[s] knowledge of the law and civil procedure." *Id.* at 3.

At this stage in the proceedings, however, Shallowhorn has failed to demonstrate a likelihood of success, or the legal complexity required to support the appointment of pro bono counsel pursuant to 28 U.S.C. § 1915(e)(1). *See Terrell*, 935 F.3d at 1017. First, Plaintiff has failed to show a likelihood of success as to any potential constitutional claim against any of the defendants. Furthermore, that an attorney would be better prepared to litigate and try (or settle) this action, does not amount to an exceptional circumstance warranting the appointment of counsel. *See Rand v. Rowland*, 113 F.3d 1520, 1525 (9th Cir. 1997) (finding no abuse of discretion under 28 U.S.C. § 1915(e) when district court denied appointment of counsel despite fact that pro se prisoner "may well have fared better—particularly in the realm of discovery and the securing of expert testimony"), *withdrawn in part on other grounds on reh'g en banc*, 154 F.3d 952 (9th Cir. 1998);

*Courtney v. Kandel*, 2020 WL 1432991, at *1 (E.D. Cal. Mar. 24, 2020) (stating challenges related to conducting discovery and preparing for trial "are ordinary for prisoners pursuing civil rights claim" and cannot form the basis for appointment of counsel). In addition, the Court does not find that the issues in this case are "so complex that due process violations will occur absent the presence of counsel." *Bonin v. Vasquez*, 999 F.2d 425, 428–29 (9th Cir. 1993). Finally, to the extent Plaintiff asserts his indigency, lack of legal education and imprisonment make it necessary for appointment of counsel, these are issues common to many prisoners and do not amount to exceptional circumstances. *See, e.g.*, *Wood v. Housewright*, 900 F.2d 1332, 1335–36 (9th Cir. 1990). Therefore, the Court finds no "exceptional circumstances" currently exist and **DENIES** Plaintiff's renewed motion for appointment of counsel without prejudice.

**SCREENING PURSUANT TO 28 U.S.C. §§ 1915(e)(2) & 1915A(b)**

A.   **Standard of Review**

Because Plaintiff is a prisoner proceeding IFP, his FAC requires pre-Answer screening pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b). The Court must *sua sponte* dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) ("Failure to state a claim under § 1915A incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).") Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining

whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

Title 42 U.S.C. § 1983 "creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

**B.      Plaintiff's Factual Allegations**

The factual allegations in Shallowhorn's FAC are difficult to follow but the Court will attempt to broadly summarize them.[2] Shallowhorn states that Velez was his "counselor" at some point. ECF No. 15 at 11. When Plaintiff recounted "negative conversations" during counseling sessions, Velez later shared what Plaintiff had said with Carrillo, Galindo, or Nunez, after which the four Defendants "targeted" him. *Id.* It is unclear when these counseling sessions occurred or when Velez purportedly told Carrillo, Galindo and/or Nunez about them.

On July 25, 2023, after an annual Unit Classification Committee ("UCC") hearing, Plaintiff was placed on "C-Status" with a loss of privileges ("LOP") for 180 days due to previous Rule Violation Reports ("RVR"). *Id.* at 36, 38; *see also* ECF No. 15-1 at 38–39. Hopper was the "head" of the UCC. ECF No. 15 at 36. At some point during the hearing,

---

[2] The FAC is 45 pages long and in the first 20 pages of factual allegations, Plaintiff jumps from subject to subject with little context and no clear chronology. *See* ECF No. 15 at 9–28. The Plaintiff also includes 46 pages of exhibits which are not cited in the FAC but which the Court will nonetheless reference to assist in understanding the chronology of events, to the extent possible. *See* ECF No. 15-1.

Hopper asked Velez, who was Plaintiff's "counselor," if he should give Shallowhorn 90 days or 180 days LOP. *Id.* at 47. Velez "aggressively opposed" 90 days. *Id.* After hearing Velez's recommendation, Hopper assessed the 180-day LOP.[3] *Id.* at 47–48. Shallowhorn, who is black, alleges Velez recommended him for 180-day LOP because of racial bias. He states Velez previously recommended only a 60-day LOP for a non-black inmate. *Id.* at 10.

After Plaintiff was placed on C-Status, Carrillo, Nunez and Galindo confiscated his television, despite other inmates being allowed to keep their televisions while on C-Status. *Id.* at 18–19. Plaintiff also had a "medical chrono" permitting him to keep his television while on restricted status. *Id.* at 22. The television was returned to Shallowhorn two days later, on July 27, 2023, for "medical reasons." *Id.*; *see also* ECF No. 15-1 at 11–12. Velez, Hopper and Estrada failed to discipline Carrillo, Nunez and Galindo for taking the television. ECF No. 15 at 19.

At some point after the UCC hearing, Plaintiff filed an administrative grievance, arguing he was improperly placed on C-Status by the committee. ECF No. 15 at 36. Hopper reviewed the grievance and denied it. ECF No. 15-1 at 38–39. Hopper also failed to "correct" a past RVR, which provided some of the basis for his placement on C-Status. ECF No. 15 at 37. Shallowhorn states Hopper was biased against him. *Id.* at 23, 36–37.

Shallowhorn alleges that "at some point or another," Galindo, Nunez, Carrillo and Velez discussed "ways to punish, harrass, [and] intimidate" him. *Id.* at 13–14. Plaintiff alleges the four Defendants acted "in concert" by "leaving each other notes, computer messages, talking in passing, and other group gatherings to target Plaintiff." *Id.* at 15. On "numerous occasions," Plaintiff saw Carrillo, Nunez, Galindo and Velez looking at grievances on a staff computer. *Id.* At some unspecified time prior to the UCC hearing, he overheard Carrillo state: "Next week somebody['s] T.V. and program going to be took [sic]." *Id.* at 13.

---

[3] It appears Plaintiff was returned to "A status" on October 3, 2023. ECF No. 15-1 at 18.

At another unspecified time, Nunez and Galindo came to Plaintiff's cell. Nunez addressed Plaintiff in a "threatening tone" and said he was "tired of the 'he say, she say [sic].'" *Id.* Galindo "didn't say much" but his manner suggested he was there to "intimidate" Plaintiff. *Id.* at 11. Both Nunez and Galindo attempted to convince Shallowhorn "not to file a grievance." *Id.* Shallowhorn appears to allege that Nunez and/or Galindo "returned" a grievance he had placed in a secure drop box. *Id.* at 12–13.

On another occasion, Carrillo and Galindo took Plaintiff to the program office, where 10–12 other staff were also present. *Id.* at 16. Carrillo showed an unnamed sergeant a document related to the taking of Plaintiff's television. *Id.* When other prison staff asked why Carrillo was "always messing with" Plaintiff, Carrillo "went crazy" and told other staff, "What I say goes." *Id.* at 16–17. This statement, Shallowhorn alleges, was a veiled reference to the "Green Wall," which Plaintiff describes as wide conspiracy among correctional officers to maintain a code of silence regarding staff misconduct and abuse. *Id.* at 17. Shallowhorn states that even officers who do not themselves commit misconduct further the conspiracy by remaining silent or testifying falsely to cover up the misconduct. *Id.* at 18.

While Shallowhorn was on C-Status, Carrillo and Estrada denied him the amount of yard and dayroom time he was entitled to and other privileges. *Id.* at 34. Doe #1 and Doe #2 denied him outdoor exercise time during this period. *Id.* at 25. At some unspecified time, Shallowhorn filed an administrative grievance about his "right to yard/dayroom activities," which Moseley denied after a "biased investigation." *Id.* at 35.

**C.  Discussion**

In his FAC, Plaintiff names nine Defendants—Carrillo, Nunez, Galindo, Velez, Estrada, Doe #1, Doe #2, Hopper, and Moseley in their individual capacities. *Id.* at 3–5. He alleges Defendants violated his right to equal protection, retaliated against him in violation of his First Amendment rights and conspired against him. *Id.* at 6–8. He seeks money damages and injunctive relief preventing, among other things, future "reprisal, retaliation [and] harassment." *See id.* at 38.

### 1. Rule 8

First, the Court finds the FAC violates Rule 8 of the Federal Rules of Civil Procedure. Rule 8 requires that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (alteration in original). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555, 557). However, a complaint that is too verbose, long, confusing, redundant, irrelevant, or conclusory may be dismissed for failure to comply with Rule 8. *See Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1058–59 (9th Cir. 2011) (collecting cases upholding dismissals for those reasons). The purpose of Rule 8(a) is to ensure that a complaint "fully sets forth who is being sued, for what relief, and on what theory, with enough detail to guide discovery." *McHenry v. Renne*, 84 F.3d 1172, 1177 (9th Cir. 1996).

Here, Plaintiff's FAC is neither short nor plain. It is 45 pages long and, while it lists three causes of action, the factual allegations are lumped together in a disjointed and confusing manner, without a discernable chronology and seemingly regardless of their relation to a particular legal claim. For instance, the first 20 pages are comprised of scattershot allegations lacking in context. Plaintiff jumps from one topic to another and fails to provide dates or a discernable chronology. ECF No. 15 at 9–28. The last 13 pages appear to be a photocopied portion of Plaintiff's original complaint, with a few hand-written notations added, and which begins mid-sentence. *Compare id.* at 27–39, *with* ECF No. 1 at 23–35.

Shallowhorn also provides 46 pages of exhibits (*see* ECF No. 15-1), but he fails to reference them in his FAC or provide context for them. *See Stewart v. Nevada*, 2011 WL 588485, at *2 (D. Nev. Feb. 9, 2011) ("The Court will not comb through attached exhibits seeking to determine whether a claim possibly could have been stated where the pleading

1  itself does not state a claim."); *Quezada v. Sherman*, 2018 WL 6111289, at *3 (E.D. Cal.
2  Nov. 21, 2018) (stating a plaintiff "may not merely cite to an exhibit and expect the Court
3  to extrapolate specific facts from it upon which Plaintiff might base a claim; rather, Plaintiff
4  must state the factual evidence derived from the exhibit in his allegations and may only
5  cite to the exhibit to bolster/support his factual allegations").

6  In sum, while the factual allegations include numerous references to "retaliation," a
7  wide "conspiracy," and "bias," they fail to provide any clear notice as to which *specific*
8  conduct individual defendants are being sued for. *See Nevijel v. N. Coast Life Ins. Co.*, 651
9  F.2d 671, 674 (9th Cir. 1981) (affirming Rule 8(a) dismissal of a 48–page complaint
10 characterized as "'verbose, confusing and almost entirely conclusory'" and which
11 contained an "additional 23 pages of addenda and exhibits"); *see also Forte v. Merced*
12 *County*, 2016 WL 159217, at *6 (E.D. Cal. Jan. 13, 2016) (finding amended complaint
13 with a "long and difficult to follow [factual] narrative" alleging "a series of unrelated
14 instances described in no logical order" violated Rule 8); *Nakanwagi v. Arizona*, 2024 WL
15 3413970, at *2 (D. Ariz. July 15, 2024). As currently pleaded, Plaintiff's FAC puts the
16 defendants (and the Court) in a difficult position requiring guesswork and assumptions to
17 discern the specific factual bases for the claims asserted, and therefore it must be dismissed.
18 *See* Fed. R. Civ. P. 8; *see also McHenry*, 84 F.3d at 1179–80 (affirming dismissal pursuant
19 to Rule 8(a) where complaint was "argumentative, prolix, replete with redundancy, and
20 largely irrelevant"). Therefore, the FAC is DISMISSED for failure to comply with Rule 8.

21  **2.   Realleged Claims Previously Dismissed Without Leave to Amend**

22 In addition, to the extent Shallowhorn has realleged claims in his FAC which this
23 Court previously dismissed *without* leave to amend, those claims are again dismissed. The
24 Ninth Circuit has stated, "'claims dismissed with prejudice [or] without leave to amend
25 [need not] be repled in a subsequent amended complaint to preserve them for appeal.'"
26 *Barnes v. Sea Haw. Rafting, LLC*, 889 F.3d 517, 531 (9th Cir. 2018) (alterations in original)
27 (quoting *Lacey v. Maricopa County*, 693 F.3d 896, 925 (9th Cir. 2012). Thus, it is not
28 necessary for Plaintiff to reallege those claims for purposes of appeal. And while the Court

is not aware of a Ninth Circuit precedent prohibiting a plaintiff from repleading claims that have been dismissed without leave to amend, "the majority of cases addressing this issue" have found claims dismissed without leave to amend may not be realleged, reasoning that "the inclusion of claims already dismissed with prejudice ... has the potential to confuse the scope of discovery and any dispositive motions." *See Benamar v. Air France-KLM*, 2015 WL 4606751, at *3 (C.D. Cal. July 31, 2015) (citing cases); *Loumena v. Nichols*, 2016 WL 7645559, at *3 (N.D. Cal. Feb. 3, 2016) (dismissing claims realleged after being previously dismissed with prejudice).

In dismissing the original complaint, the Court found Shallowhorn had failed to state Eighth Amendment, Due Process, Access to Courts, or HIPAA claims and explicitly declined to grant leave to amend as to those claims, finding it would be futile to do so. *See* ECF No. 13 at 10, 13, 15, 18. Accordingly, to the extent Plaintiff's FAC contains several references to claims previously dismissed without leave to amend,[4] those claims are again dismissed *without leave to amend* for the same reasons discussed in this Court's October 3, 2024 dismissal order. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); *Iqbal*, 556 U.S. at 678.

### 3. Remaining Claims

While the FAC is dismissed for failure to comply with Rule 8, the Court also finds Plaintiff has failed to state an equal protection, retaliation or conspiracy claim for the reasons discussed below.

#### a. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment broadly requires the government to treat similarly situated people equally. *Hartman v. Cal. Dep't of Corr. &*

---

[4] Specifically, he appears to again allege that he was found guilty of rule violations based on "false testimony" and his grievances were improperly denied in violation of due process. ECF No. 15 at 14, 19. He also appears to reallege violations of his Eighth Amendment rights when he was denied yard and dayroom time. *Id.* at 32–33. The FAC also contains references to "stealing mail" and a denial of "access to courts." *Id.* at 12.

*Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). To state an equal protection claim, a plaintiff must typically allege "'defendants acted with an intent or purpose to discriminate against [him] based upon membership in a protected class,'" such as a particular race or religion. *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013) (quoting *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998)). "Intentional discrimination means that a defendant acted at least in part *because* of a plaintiff's protected status." *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003) (emphasis in original).

While Shallowhorn claims all nine defendants violated his right to equal protection, he provides only vague, conclusory allegations as to Carrillo, Galindo, Nunez, Estrada, Doe #1, Doe #2, Moseley or Hopper, stating: "Defendants overlook[] the tier process of punishment and grant[] lesser punishment for non-blacks and give blacks the max." ECF No. 15 at 9. Shallowhorn provides no specific allegations which could show any of these defendants intentionally discriminated against him because of his race. *See Furnace*, 705 F.3d at 1030.

Plaintiff's equal protection claim appears to focus on Velez. Specifically, Shallowhorn alleges Velez urged Hopper[5] to give him the maximum of 180 days LOP but had previously recommended a shorter LOP sentence for a non-black inmate. ECF No. 15 at 39. But while Shallowhorn alleges membership in a protected class, he fails to plausibly allege Velez discriminated against him "because of" his race. *See Serrano*, 345 F.3d at 1082. Moreover, Plaintiff provides no facts to suggest this non-black inmate was otherwise similarly situated to him as to their disciplinary record or that the difference in recommended LOP terms between himself and the non-black inmate had anything to do with race. *See id.*

---

[5] While Plaintiff also alleges Hopper was "biased," he does not assert that bias was race-based; rather he appears to allege Hopper was not impartial because he was involved in the RVR hearing and a grievance related to the hearing. ECF No. 15 at 36–37.

In sum, Plaintiff's conclusory allegations are again insufficient to state an Equal Protection claim against any Defendant. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); *Iqbal*, 556 U.S. at 678.

        b.    Retaliation

As the Court advised Plaintiff in its previous screening order, "[p]risoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." *Watison*, 668 F.3d at 1114 (citing *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009)). But "[w]ithin the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005). "Because direct evidence of retaliatory intent rarely can be pleaded in a complaint, allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal." *Watison*, 668 F.3d at 1114; *see Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995) ("[T]iming can properly be considered as circumstantial evidence of retaliatory intent.").

Here, Plaintiff alleges he engaged in protected conduct when he "filed several grievances and 602 appeals." *See Watison*, 668 F.3d at 1114 ("The filing of an inmate grievance is protected conduct."). But he fails to identify any particular grievance that gave rise to any particular act of retaliation. Moreover, as to Defendants Estrada, Doe #1, Doe #2, Hopper and Moseley, Plaintiff merely speculates they were aware of such grievances. *See Pratt*, 65 F.3d at 808 (concluding mere speculation is insufficient to show a defendant had knowledge of the plaintiff's protected conduct).

Even assuming these defendants knew of past grievances, Shallowhorn provides no facts suggesting they were a "substantial" or "motivating" factor behind their conduct. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). For instance, Shallowhorn alleges Estrada, Doe #1 and Doe #2 denied him exercise time while he was

on C-Status "in retaliation [and] in support of the Green Wall." ECF No. 15 at 25. Even assuming Estrada, Doe #1 and Doe #2 had sufficient knowledge of prior grievances, the FAC contains no facts suggesting this purported knowledge was a "substantial" or "motivating" factor behind their isolated decisions to deny Plaintiff yard time. *See Brodheim*, 584 F.3d at 1271. Moreover, Shallowhorn acknowledges that he was on C-Status with a loss of privileges during the relevant period and thus has failed to allege Estrada, Doe #1 and Doe #2 lacked "legitimate correctional goals" in limiting his yard time while he was on a restricted status. *See Pratt*, 65 F.3d at 806 ("The plaintiff bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains."). Thus, he has failed to state a claim against Estrada, Doe #1 and Doe #2.

As for Hopper and Moseley, Shallowhorn alleges they retaliated against him by denying unspecified administrative grievances and appeals he had filed. But he again fails to plead the absence of legitimate correctional goals. Furthermore, "the denial of a grievance or appeal 'neither constitutes an adverse action that is more than de minimis nor is it sufficient to deter a prisoner of ordinary firmness from further First Amendment activities.'" *Chacon v. Diaz*, 2020 WL 7214292, at *5 (C.D. Cal. Sept. 28, 2020) (quoting *Dicey v. Hanks*, 2015 WL 4879627, at *5 (E.D. Cal. Aug. 14, 2015) (collecting cases and denying leave to amend because "denial of a grievance does not constitute an adverse action"), *report and recommendation adopted*, 2015 WL 6163444 (E.D. Cal. Oct. 15, 2015)); *see also Allen v. Kernan*, 2018 WL 2018096, at *7 (S.D. Cal. Apr. 30, 2018) (same), *aff'd*, 771 F. App'x 407 (9th Cir. 2019); *cf. Richey v. Dahne*, 733 F. App'x 881, 884 (9th Cir. 2018) ("Neither our prior case law nor that of the Supreme Court has clearly established that merely refusing to accept a grievance for processing is a retaliatory adverse action."). Therefore, he has failed to state a retaliation claim against Hopper and Moseley.

Shallowhorn also fails to state a claim against Carrillo, Nunez, Galindo and Velez. He alleges they retaliated against him by taking his television, denying him privileges and generally giving him a hard time. While Plaintiff alleges Carrillo, Nunez, Galindo and

Velez were generally aware he had filed grievances, it is unclear when they learned of them in relation to the alleged retaliatory conduct. Retaliatory motive may be shown by proximity and time coupled with inconsistency with previous actions. *Bruce v. Ylst*, 351 F.3d 1283, 1288–89 (9th Cir. 2003). But here, Plaintiff has failed to provide dates or a clear chronology of events sufficient for the Court to make such an inference. *See McCarter v. Kernan*, 2017 WL 11630973, at *8 (C.D. Cal. Feb. 3, 2017) (dismissing retaliation claim where plaintiff failed to provide "a chronology of events from which retaliation can be inferred"). Mere speculation that defendants acted out of retaliation is not sufficient. *Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014). "[A]ction colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway." *Hartman v. Moore*, 547 U.S. 250, 260 (2006); *see also Baker v. Tevault*, 2022 WL 7033701, at *12 (D. Ariz. Oct. 12, 2022). Retaliatory motivation is not established simply by showing an adverse action by the defendant after protected speech. *Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (stating a retaliation claim cannot rest on "the logical fallacy of *post hoc, ergo propter hoc*, literally, 'after this, therefore because of this'"). As such, Shallowhorn has failed to adequately allege the causation required to state a claim against Carrillo, Nunez, Galindo and Velez.

Plaintiff also fails meet his burden to plead Carrillo, Nunez, Galindo and Velez lacked a "legitimate correctional goal" for the actions he complains of, such as the confiscation of his television and restricting his yard/exercise time and other privileges while he was on a restricted status. *See Pratt*, 65 F.3d at 808. And finally, while allegations of harm "that is more than minimal" are generally sufficient to plead a "chilling effect," the Court notes the FAC fails to allege such a "chilling effect." *See Jenkins v. Drake*, 2020 WL 2771999, at *9 (C.D. Cal. May 5, 2020) (dismissing retaliation claim and noting that the plaintiff continued to file grievances and threatened court action to protect his rights, and the FAC failed to make even conclusory allegations about the chilling effect of defendants' actions); *see also Ingram v. McDowell*, 2023 WL 9507681, at *11 (C.D. Cal. Dec. 19, 2023).

1    Therefore, Plaintiff has failed to state a First Amendment retaliation claim. *See* 28
2    U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); *Iqbal*, 556 U.S. at 678.

### c. Conspiracy

Last, Shallowhorn fails to state a claim that Defendants conspired to retaliate against him. To state a claim for conspiracy under section 1983, Plaintiff must show (1) the existence of an agreement or a meeting of the minds to violate his constitutional rights and (2) an actual deprivation of those constitutional rights. *Avalos v. Baca*, 596 F.3d 583, 592 (9th Cir. 2010); *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2001). "Conspiracy is not itself a constitutional tort under § 1983," and it "does not enlarge the nature of the claims asserted by the plaintiff, as there must always be an underlying constitutional violation." *Lacey*, 693 F.3d at 935; *see also Hart v. Parks*, 450 F.3d 1059, 1071 (9th Cir. 2006).

Here, as discussed above, Shallowhorn has failed to state a plausible constitutional claim against any defendant as such, he has also failed to state a conspiracy claim. *See Cassettari v. Nevada County*, 824 F.2d 735, 739 (9th Cir. 1987) ("The insufficiency of these allegations to support a section 1983 violation precludes a conspiracy claim predicated upon the same allegations."); *Lacey*, 693 F.3d at 935 (9th Cir. 2012) (noting that to state a conspiracy claim, "there must always be an underlying constitutional violation").

Furthermore, a conspiracy claim may not be based on mere speculation or conclusory allegations. *See Burns v. County of King*, 883 F.2d 819, 821 (9th Cir. 1989). And the Court notes that broad allegations concerning a wide conspiracy to violate inmates' rights, known as the "Green Wall," are insufficient to state a conspiracy claim. *See Razaq v. Cal. Dep't of Corr.*, 2020 WL 5797931, at *3 (E.D. Cal. Sept. 29, 2020) ("A bare allegation that defendants 'Green Wall' conspired to violate inmates' constitutional rights will not suffice to give rise to a conspiracy claim under section 1983."); *see also Jones v. Jimenez*, 2015 WL 8538922, at *7 (E.D. Cal. Dec. 11, 2015) (finding prisoner's references to "green wall" conspiracy tactics insufficient to state a cognizable conspiracy claim); *Taylor-El v. Cisneros*, 2023 WL 11828680, at *8 (E.D. Cal. June 27, 2023) ("A bare allegation that Defendants 'green wall' conspired to violate inmates' constitutional rights

will not suffice to give rise to a conspiracy claim under section 1983.").

Therefore, Shallowhorn has failed to state a claim that Defendants conspired to retaliate against him. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); *Iqbal*, 556 U.S. at 678.

**D.    Leave to Amend**

Because Plaintiff is proceeding pro se, the Court grants him one final opportunity to amend. Plaintiff is cautioned, however, that in doing so, he must comply with Rule 8, this order and the Court's prior screening order. Plaintiff should clearly address the defects that the Court identified in this order and refrain from raising claims previously dismissed without leave to amend.

In addition, Plaintiff is reminded to write short, plain statements telling the Court: (1) the constitutional right Plaintiff believes was violated; (2) the name of the Defendant who violated the right; (3) exactly what that Defendant did or failed to do; (4) how the action or inaction of that Defendant is connected to the violation of Plaintiff's constitutional right; and (5) what specific injury Plaintiff suffered because of that Defendant's conduct. *See Rizzo v. Goode*, 423 U.S. 362, 371–72, 377 (1976). Plaintiff need not submit exhibits, but if he chooses to do so, he should individually identify each of them and refer to those exhibits by their identifying marker throughout his second amended complaint (e.g., Exhibit A, Exhibit B, etc.). Conclusory allegations that a defendant has violated a constitutional right are insufficient and will be dismissed.

**CONCLUSION AND ORDER**

For the reasons set forth above, the Court:

1.    **DENIES** Plaintiff's Motion for appointment of counsel.

2.    **DISMISSES** the FAC in its entirety for failure to comply with Federal Rule of Civil Procedure 8 and for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b).

3.    **GRANTS** Plaintiff **sixty (60)** days leave from the date of this Order in which to file a Second Amended Complaint which cures the deficiencies of pleading noted in this

Order. Plaintiff's Second Amended Complaint must be complete by itself without reference to previously filed pleadings. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey*, 693 F.3d at 928 (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled").

If Plaintiff fails to timely file a Second Amended Complaint, the Court will enter a final Order dismissing this civil action based both on failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1), and failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED.**

Dated: May 27, 2025

Hon. William Q. Hayes
United States District Court